IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-187

NATHANIEL WILLINGHAM,            )
                                 )
                    Plaintiff,   )
                                 )
         v.                      )     **ORDER**
                                 )
RAY MABUS, SECRETARY,            )
DEPARTMENT OF NAVY               )
                                 )
                    Defendant.   )

On January 4, 2016, Nathaniel Willingham ("Willingham" or "plaintiff") sued Ray Mabus, Secretary of the Department of Navy ("Navy" or "defendant") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended [D.E. 1]. On October 27, 2017, the Navy moved for summary judgment [D.E. 35] and filed a memorandum in support [D.E. 36]. On December 1, 2017, Willingham responded in opposition [D.E. 43]. On December 14, 2017, the Navy replied [D.E. 46]. As explained below, the court grants the Navy's motion for summary judgment.

I.

On November 23, 2009, the Camp Lejeune MCCS Human Resources Division ("MCCS HRD") posted a job vacancy for an equal employment opportunity ("EEO") specialist. See Compl. [D.E. 1] ¶ 12. Andrew Ennett, Director of MCCS HRD, and the selecting official for the position, had the option to fill the vacancy through competitive appointment, non-competitive appointment, or reassignment. See [D.E. 38-2] 5–6, 38–47; [D.E. 38-4] 7–8. An employee who is reassigned to a vacant position is excluded from the competitive appointment process, so long as the reassigned

employee is moved to "a position with no higher pay potential" than the position currently held by that employee. [D.E. 38-2] 42; see [D.E. 38-4] 5.

Willingham, an African-American male, and 61 other applicants applied for the EEO specialist position through the competitive appointment process. See Compl. ¶¶ 13–16. A Human Resources Technician ("HRT") in the MCCS HRD reviewed all of the applications. See id. ¶ 15. The HRT then determined which candidates met the base line eligibility requirements and compiled a list of the "best qualified" applicants. See id.; [D.E. 38-2] 5–6. Willingham was included on the list of "best qualified" applicants along with five other individuals. See Compl. ¶ 16; [D.E. 38-2] 5–6. The HRT also included the name of one applicant who was eligible for a noncompetitive appointment in accordance with Marine Corps policy. See Compl. ¶ 18; [D.E. 38-2] 5–6.

On December 29, 2009, the HRT forwarded the results of the screening analysis and the applicant list to Ennett. See Compl. ¶¶ 17–18, 30; [D.E. 38-2] 5–6. On January 4, 2010, Ennett organized a rating and ranking panel to interview the "best qualified" applicants. See Compl. ¶ 19; [D.E. 38-2] 11–31. Ennett was not required to organize a rating and ranking panel, however, he was permitted to use the panel to assist him concerning the hiring decision. See [D.E. 38-2] 45–46. The rating and ranking panel included Patricia Turner, MCCS HRD Deputy Director, Jose Cabrera, MCCS Director of the Review and Analysis Division, and Gwendolyn Hopkins, Equal Employment Opportunity Supervisor. See [D.E. 37] ¶ 18.

After the rating and ranking panel interviewed the candidates, the panel recommended John Fuller to Ennett. See [D.E. 38-4] 13–14; Compl. ¶ 20. At the time, the panel had interviewed Fuller over the telephone, but the panel contacted Fuller to arrange a face-to-face interview before making any final recommendation. See [D.E. 45] 66–67. On January 19, 2010, Fuller withdrew his application for personal reasons. See [D.E. 38-4] 16; Compl. ¶ 20. Although Willingham had the

2

second highest score behind Fuller, the panel recommended Theresa Foster, an African-American female, for the position. See [D.E. 38-3] 43; [D.E. 38-4] 16; Compl. ¶ 20. The panel recommended Foster instead of Willingham because Foster's credentials and interview impressed the panel, and the panel was concerned that Willingham came across as condescending and unapproachable in his interview. See [D.E. 38-4] 16–19, 43, 76. The panel then submitted its recommendation to Ennett.

Ennett was not excited about hiring any of the candidates that the panel interviewed. See [D.E. 38-4] 57. In accordance with the Marine Corps reassignment policy, Ennett decided to see if Myonsuk (Kathy) Marshall, an Asian female, was interested in the position. See [D.E. 38-3] 46–47. Ennett had known Marshall for about ten years and felt her credentials and her experience made her an ideal candidate for the position. See [D.E. 38-4] 57–59. At the time of the vacancy, Marshall was employed in the Camp Lejeune MCCS Review and Analysis Division (RVAN) as an Inspection/Investigation Manager. See [D.E. 38-2] 34. Marshall initially had submitted an application for the EEO specialist position but withdrew her application because she was involved in a project that she felt she needed to complete. See [D.E. 38-3] 46.

On January 22, 2010, Turner, on behalf of Ennett, asked Marshall if she was interested in the EEO specialist position. See id. at 47. Shortly thereafter, Marshall informed Turner that she was interested in the EEO specialist position. See id. at 48–49. On January 26, 2010, Ennett decided to cancel the EEO specialist position vacancy, non-select all of the referred applicants, and select Marshall for the vacancy. See [D.E. 38-2] 33; [D.E. 38-3] 30. Marine Corps policy allowed Ennett to reassign Marshall because the reassignment did not put Marshall in a position with "higher pay potential." See [D.E. 38-2] 41–42; [D.E. 38-4] 27.

On May 12, 2010, Willingham filed a complaint with an Equal Employment Opportunity ("EEO") counselor alleging that the Navy did not select him for the EEO specialist position in

3

retaliation for his protected activities. See [D.E. 38-2] 48–52. Willingham's protected activities concern his legal representation of several civilian employees in EEO matters at Camp Lejuene from approximately 1995 until 2005. See Compl. ¶ 44; [D.E. 38-3] 12. Thereafter, Willingham expanded his complaint to allege race discrimination. See [D.E. 38-2] 53.[1] On June 7, 2013, an Administrative Law Judge ("ALJ") held a hearing concerning Willingham's claims and held that Willingham failed to prove his race discrimination claim or retaliation claim. See [D.E. 18-1]. On January 7, 2015, the Equal Employment Opportunity Commission ("EEOC") affirmed the ALJ's decision. See [D.E. 18-3]. On October 1, 2015, the EEOC denied Willingham's request for reconsideration. See [D.E. 1] 11–13.

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

---

[1] Willingham also alleged age discrimination but abandoned that claim. See [D.E. 38-4] 3.

4

Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise, a "mere . . . scintilla of evidence in support of the [nonmoving party's] position [will not suffice]; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252; see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

A.

Title VII prohibits employers from failing to hire an individual "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish such a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013).

Direct evidence is evidence from which no inference is required. To show race discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. See generally Hill, 354 F.3d at 286–91. Such direct evidence would include a decisionmaker's statement that he did not promote plaintiff due to his race. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012).

Willingham lacks direct evidence of race discrimination, and instead relies on the McDonnell Douglas framework. Under this framework, a plaintiff must first establish a prima facie case of discrimination. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 256; King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).

In order to establish a prima facie case of failure to hire based on race, Willingham must show that: (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection the position remained open, or was filled in a manner giving rise to an inference of race discrimination. See, e.g., EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001); Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998). In order to prove the fourth element, a plaintiff must must ordinarily show that the person selected was outside of the plaintiff's protected class. See, e.g., Miles v. Dell, Inc., 429 F.3d 480, 486–87 (4th Cir. 2005); Brown, 159 F.3d at 905.

The court assumes without deciding that Willingham established a prima facie case. In turn, the Navy has articulated a non-discriminatory reason for not selecting Willingham: Ennett, the selecting official, exercised his authority to reassign Marshall to the vacancy because he believed her credentials and experience made her an ideal candidate for the vacancy. See [D.E. 38-4] 57. Thus,

6

the court analyzes whether Willingham has raised a genuine issue of material fact concerning pretext.

A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). When determining whether a plaintiff has sufficiently demonstrated the falsity of an employer's proffered justification, courts must recognize that an "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Burdine, 450 U.S. at 259; see Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998); Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1130 (4th Cir. 1995); Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 909–11 (4th Cir. 1989).

In attempting to raise a genuine issue of material fact concerning pretext, Willingham argues that he is significantly more qualified than Marshall. See [D.E. 43] 7. If a plaintiff makes a strong showing that he was "discernibly better qualified" than the candidate selected for a promotion, a plaintiff may have raised a genuine issue of material fact as to whether the employer's proffered justification for promoting the successful applicant is pretextual. See Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 261–62 (4th Cir. 2006). But "[w]hen a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Id. at 261; see Hux v. City of Newport News, 451 F.3d 311, 314–19 (4th Cir. 2006); Causey, 162 F.3d at 801.

Willingham argues that he is significantly more qualified than Marshall because Marshall did not meet the qualifications listed in the equal employment specialist vacancy posting and because Ennett purportedly admitted that Willingham was more qualified than Marshall. Although Ennett admitted that Marshall did not meet the qualifications listed in the vacancy posting, this admission

7

does not show that Willingham was significantly more qualified than Marshall. See [D.E. 45] 63. The merit staffing process through which Willingham applied required candidates to meet base line eligibility requirements. On the other hand, reassignments of current employees with "no higher pay potential" (like Marshall) are specifically excluded from the merit staffing process. See [D.E. 38-2] 42. Ennett selected Marshall for the position through reassignment; therefore, Marshall was not required to meet the same eligibility requirements as Willingham. See id.; [D.E. 38-4] 27. Moreover, Ennett testified that Marshall had all of the qualifications necessary to be reassigned to the EEO specialist position and that she was "a perfect candidate" for the position. See [D.E. 38-4] 60–61. Furthermore, Patricia Turner testified that Marshall initially would have been included on the candidates list and received an interview through the non-competitive process (i.e., the non-merit staffing process) had she not withdrawn her application. See id. 27.

As for Willingham's contention that Ennett admitted Willingham was more qualified than Marshall, Willingham takes Ennett's testimony out of context. Ennett testified that based on Willingham's resume, Willingham had superior technical EEO experience. See [D.E. 45] 62. Ennett, however, testified that the EEO specialist position requires much more than just technical EEO experience. See [D.E. 38-3] 41. Ennett also testified that he selected Marshall because she was a "proven superstar," she had good relationships with other employees, she had superior writing skills, and she knew how to perform investigations and ascertain facts. See [D.E. 38-4] 57–59. Ennett opined that these credentials were necessary for the EEO specialist position. See id.; [D.E. 38-3] 41. Thus, "in the eyes of the decisionmaker," Marshall was better qualified than Willingham for the position. Furlow v. Donahoe, No. 1:11-CV-862, 2013 WL 595915, at *6–8 (M.D.N.C. Feb. 15, 2013) (unpublished); see Hux, 451 F.3d at 317. Moreover, Willingham has produced no evidence reflecting that Ennett's reason for selecting Marshall is "unworthy of credence." Holland

8

v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Instead, Willingham's evidence of pretext merely establishes his disagreement with Ennett's business judgment. See, e.g., Cardoso v. Robert Bosch Corp., 427 F.3d 429, 436 (7th Cir. 2005); Shoffner v. Talecris Biotherapeutics, Inc., No. 5:10–CV–406–FL, 2012 WL 525550, at *14 (E.D.N.C. Feb. 16, 2012) (unpublished). Willingham's perception of his own experience, performance, and skills, however, is not relevant. It is the perception of the decisionmaker that counts. See, e.g., King, 328 F.3d at 149; Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006). Even viewing the evidence in the light most favorable to Willingham, Willingham's pretext argument fails.

As for Willingham's contention that the rating and ranking committee discriminated against him based on race, that claim also fails. First, the court doubts Foster's relevance to this dispute given that Ennett did not select Foster as the EEO specialist. See Heiko, 434 F.3d at 261–62. Assuming without deciding that Foster is relevant, the argument fails. Here, the rating and ranking panel recommended Foster, an African-American female, for the position. Thus, Willingham has failed to show the rating and ranking panel selected a person outside of Willingham's protected class. See, e.g., Miles, 429 F.3d at 486.[2]

Alternatively, Willingham's pretext argument concerning Foster fails. The EEO specialist position description required a candidate that would be courteous and create a positive atmosphere and culture. See [D.E. 38-2] 2. The members of the rating and ranking panel did not think that

---

[2] To the extent Willingham argues that the rating and ranking panel engaged in race discrimination when it recommended Fuller, this argument fails because Fuller was not ultimately selected. See [D.E. 45] 66; [D.E. 38-2] 32.

9

Willingham met this requirement because he appeared condescending and unapproachable in his interview. See [D.E. 38-4] 18, 43, 75–76. Willingham's evidence of pretext merely establishes his disagreement with the panel's business judgment and its assessment of his demeanor during the interview. See, e.g., Cardoso, 427 F.3d at 436; Shoffner, 2012 WL 525550, at *14.

Furthermore, Willingham has not produced any evidence that the rating and ranking panel's failure to recommend Willingham influenced Ennett's ultimate decision not to hire him. See, e.g., Noble v. Briner Intern., Inc., 391 F.3d 715, 723–24 (6th Cir. 2004) ("Unless the . . . conduct of nondecisionmakers can be imputed to the ultimate decisionmaker, such . . . conduct can not suffice to satisfy the plaintiff's burden." (quotation and alteration omitted)). Ennett was not required to use a rating and ranking panel, and Ennett had the discretion to reject the panel's recommendation. See [D.E. 38-2] 45–46. Indeed, Ennett testified that the rating and ranking panel's scores played no role in his decision to hire Marshall. See [D.E. 38-4] 56. Rather, Ennett reviewed the panel's recommendation and the other applicants, but decided to pursue Marshall because he had been interested in having her fill the position. See id. at 56–57. Thus, the court grants summary judgment to the Navy on Willingham's failure-to-hire claim.[3]

B.

As for Willingham's retaliation claim, Willingham has no direct evidence of retaliation and relies on the McDonnell Douglas framework. Under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506; Burdine, 450 U.S. at 252–55; Holland, 487 F.3d at 218; Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190

---

[3] To the extent Willingham asserts a gender discrimination claim, see Compl. ¶ 44, Willingham did not exhaust his administrative remedies concerning a gender discrimination claim before filing this action. Thus, the claim fails. See, e.g., Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148–49 (4th Cir. 1999).

(4th Cir. 2001). To establish a prima facie case, a plaintiff must show that (1) he engaged in protected activity; (2) his employer took an action against him that a reasonable employee would find materially adverse; and, (3) a casual connection between the protected activity and the adverse employment action. See, e.g., Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67–70 (2006); DeMasters v Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland, 487 F.3d at 218; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) abrogation on other grounds recognized by Foster, 787 F.3d at 299; Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs, 242 F.3d at 190; see also Nassar, 570 U.S. at 346–60. "Retaliation claims . . . require the employee to show that retaliation was a but-for cause of a challenged adverse employment action." Guessous v. Fairview Prop. Inv., LLC, 828 F.3d 208, 217 (4th Cir. 2016) (quotation and citation omitted); see Huckelba v. Deering, No. 5:16-CV-247-D, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished).

Willingham engaged in protected activity between 1995 and 2005 when he represented EEO complainants employed at Camp Lejeune. See 42 U.S.C. § 2000e-3(a). Willingham argues that the Navy did not hire him in 2009 for the EEO specialist position in retaliation for his 1995–2005 protected activity and that the reasons that Ennett and the rating and ranking panel gave for his non-selection were pretextual.

Willingham's retaliation claim fails. The four-year time lapse between Willingham's protected activity and the 2009 adverse employment action defeats any inference of but-for causation. See, e.g., Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (a

11

"lengthy time lapse" between protected activity and adverse employment action negates any inference of causation); cf. King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (a two-month time lapse between protected activity and adverse employment action is sufficient to show the causation element of a prime facie case of retaliation).

Alternatively, even if Willingham established a prima facie case, Ennett articulated a non-discriminatory reason for not selecting Willingham: Ennett reassigned Marshall to the vacancy because he believed her credentials and experience made her an ideal candidate for the vacancy. See [D.E. 38-4] 57–59. Thus, the court analyzes whether Willingham has raised a genuine issue of material fact concerning pretext.

Willingham makes the same argument concerning pretext that he made in his race discrimination claim. Specifically, Willingham argues that he is significantly more qualified than Marshall. As with his race discrimination claim, Willingham has failed to produce evidence to show Ennett's reason for selecting Marshall is "unworthy of credence." Holland, 487 F.3d at 218. Instead, Willingham's evidence of pretext merely establishes his disagreement with Ennett's business judgment of Ennett. See, e.g., Cardoso, 427 F.3d 429 at 436; Shoffner, 2012 WL 525550, at *14.

As for Willingham's allegations concerning the panel's alleged retaliation, Willingham has failed to produce evidence to create a genuine issue of material fact as to whether the panel's reasons for not recommending Willingham were pretext for retaliation. Willingham's evidence of pretext merely establishes his disagreement with the panel's business judgment. See, e.g., Cardoso, 427 F.3d 429 at 436; Shoffner, 2012 WL 525550, at *14.

Furthermore, Willingham has failed to show that the panel was the formal decisionmaker, the "actual decisionmaker," or "principally responsible for" the decision not to hire him. Reeves, 530 U.S. 133 at 151–52; Holley, 846 F. Supp. 2d at 427. As discussed, Ennett was not required to

12

use a rating and ranking panel, and Ennett had the discretion to reject the panel's recommendation. See [D.E. 38-2] 45–46. Indeed, Ennett testified that the rating and ranking panel's scores played no role in his decision to hire Marshall. See [D.E. 38-4] 56. Rather, Ennett reviewed the panel's recommendation and the other applicants, and decided to pursue Marshall because he thought she was a perfect fit for the position. See id. at 56–57. Here, there was a non-retaliatory reason for hiring Marshall over Willingham. Even viewing the evidence in the light most favorable to Willingham, Willingham's pretext argument fails. See Metzger v. Ill. State Police, 519 F.3d 677, 682 (7th Cir. 2008). Thus, the court grants summary judgment to the Navy on Willingham's retaliation claim.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 35], and GRANTS plaintiff's motion for an extension of time to file a response [D.E. 42]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 22 day of May 2018.

JAMES C. DEVER III
Chief United States District Judge